# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Shu Zheng<br><br>                    Plaintiff,<br><br>   v.<br><br>Gregory A. Richardson, in his Official Capacity, Director of the Texas Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>Kenneth Cuccinelli, in his Official Capacity, Acting Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>Kevin McAleenan, in his Official Capacity, Acting Secretary, U.S. Department of Homeland Security;<br><br>U.S. Citizenship and Immigration Services;<br><br>U.S. Department of Homeland Security,<br><br>                    Defendants. | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br>Case No.<br>No request for Jury Trial |

## INTRODUCTION

1.      This civil action seeks declaratory and injunctive relief against Gregory A.

Richardson, Director of the Texas Service Center, U.S. Citizenship and

Immigration Services ("USCIS"), U.S. Department of Homeland Security

("DHS"); Kenneth Cuccinelli, Acting Director, USCIS; Kevin McAleenan, Acting

Secretary, DHS; USCIS; and DHS (collectively "the Government") under the Administrative and Procedure Act ("APA"), 5 U.S.C. § 701, *et. seq*.

2.     On July 26, 2019, the Government unlawfully denied Mr. Shu "Steve" Zheng ("Mr. Zheng"), a citizen and national of China, a so-called "extraordinary ability" immigrant visa, as provided under Section 203(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(b)(1)(A).

3.     Mr. Zheng sought approval of a Form I-140, Immigrant Petition for Alien Workers, in the employment-based First Preference Category for Aliens of Extraordinary Ability ("EB-1 petition"), on the basis that he is an alien of extraordinary ability in the field of technology entrepreneurship.

4.     While USCIS agreed that Mr. Zheng had met the criteria for extraordinary ability, it denied his visa on the basis that Mr. Zheng's uncontroverted, pioneering achievements had not achieved sustained international or national acclaim.

5.     This Court should hold unlawful and set aside the arbitrary, capricious and irrational decision of USCIS and declare that Mr. Zheng meets the qualifications for an EB-1 petition.   *See* 5 U.S.C. § 706(2).

## **JURISDICTION**

6.     This case arises under INA § 101, 8 U.S.C. § 1101, *et. seq.*, and the APA, 5 U.S.C. § 701, *et. seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States.  *See generally Tapis Int'l v.*

*INS*, 94 Supp. 2d. 172, 173 (D. Mass. 2000); *see also Ore v. Clinton*, 675 F. Supp.

2d. 217, 222 (D. Mass. 2009).  This Court also has the authority to grant

declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C.

§ 702 and 28 U.S.C. §§ 1361-62.  Alternatively, the Court has jurisdiction under 8

U.S.C. § 1252.  The United States has waived sovereign immunity under 5 U.S.C.

§ 702.

7.      USCIS's decision to deny Mr. Zheng's visa petition is a final agency

decision ripe for judicial review, and Mr. Zheng need not have sought an appeal

before USCIS's Administrative Appeals Office ("AAO") before invoking the

jurisdiction of this Court.  *See Ore*, 675 F. Supp 2d at 223, *citing Darby v.*

*Cisneros*, 509 U.S. 137, 153-54, 113 S. Ct. 2539 (1993); *accord EG Enterprises,*

*Inc. v. DHS*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (government concurs that

plaintiff need not seek appeal before the AAO before filing action under the APA).

## **VENUE**

8.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e) because

(1) this is a civil action in which Defendants are either employees or officers of the

United States, acting in their official capacity, or an agency of the United States;

(2) a substantial part of the events or omissions giving rise to the claim occurred in

the District of Massachusetts, as Mr. Zheng resides in Massachusetts; and (3) there

is no real property involved in this action.

## PARTIES

**Plaintiff:**

9.     Mr. Zheng remains a pioneer in the field of data analytics and machine learning.  He holds a master's degree in Business Administration from Harvard Business School, a master's degree in Computer Science and Molecular Biology from the Massachusetts Institute of Technology, and a bachelor's degree in Computer Science and Molecular Biology from the Massachusetts Institute of Technology.  Mr. Zheng developed an original, general-purpose algorithm that has successfully and efficiently analyzed large-scale ordered sequences of data to solve problems of major importance.  Mr. Zheng's breakthrough technology gained worldwide adoption in wide-ranging fields.  For example, the licensing of Mr. Zheng's breakthrough technology has led to the implementation of novel strategies for cancer treatment/moderation, has improved financial data analytics, has led to the discovery of antibodies for influenza epidemics, has improved knowledge of mammalian wake and sleep cycles, and has led to the development of preventative measures for heart attacks and ischemic strokes.  The algorithm prompted Mr. Zheng to found Alpha Vantage, Inc., an AI-powered technology company based in Cambridge, Massachusetts, that employs five United States citizen employees serving more than 200,000 users worldwide.

**Defendants:**

10.     Defendant Gregory A. Richardson is the Director of the Texas Service Center ("TSC").  Among other responsibilities, the TSC adjudicates immigrant visa petitions, such as the EB-1 petition Mr. Zheng filed.  Defendant Mr. Richardson is sued in his official capacity.

11.     Defendant Kenneth Cuccinelli is the Acting Director of USCIS.  As Acting Director, Defendant Cuccinelli directs the administration of USCIS, which oversees the issuance of visas along with its responsibility to implement the INA and other immigration-related laws.  Defendant Cuccinelli is responsible for USCIS's policies, practices and procedures, which include the delegated personnel who adjudicated Mr. Zheng's EB-1 petition.  Defendant Cuccinelli is sued in his official capacity.

12.     Defendant Kevin McAleenan is the Acting Secretary of DHS, the federal agency overseeing many component agencies, including USCIS.  In his official capacity, Defendant McAleenan is responsible for the administration and enforcement of the INA and immigration-related laws.  Defendant McAleenan is sued in his official capacity.

13.     Defendant USCIS is a component agency of DHS and shares responsibility for the implementation of the INA and immigration-related laws of the United

States.  USCIS is specifically tasked with the adjudication of immigration benefits, which includes the adjudication of EB-1 petitions.

14.     Defendant DHS is a cabinet department of the United States federal government overseeing many immigration-based component parts, such as USCIS, Immigration and Customs Enforcement, and Customs and Border Protection.

## LEGAL BACKGROUND

15.     Under the INA, Congress has designated aliens with "extraordinary ability" as "priority workers" and has accordingly provided them first preference for employment-based visas.  *See generally Kazarian v. USCIS*, 596 F.3d 1115, 1120 (9th Cir. 2010).

16.     Section 203(b)(1)(A) of the Immigration and Nationality Act ("INA") defines an "alien with extraordinary ability" in the following terms:

> An alien is described in this subparagraph if –
>
> (i)     The alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii)    The alien seeks to enter the United States to continue work in the area of extraordinary ability, and
>
> (iii)   The alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).

17.     Pursuant to 8 C.F.R § 204.5(h)(2), "extraordinary ability" means "a level of expertise indicating that the individual is one of the small percentage who has risen to the very top of the field of endeavor." *Id.*

18.     To demonstrate extraordinary ability, the petitioner may present evidence that he or she "sustained national or international acclaim" either through a "one-time achievement" or through satisfaction of three or more criteria provided under 8 C.F.R. § 204.5(h)(3).

19.     If a petitioner submits initial evidence to meet three or more of the criteria to demonstrate that he or he or she has achieved the requisite acclaim and recognition in the field of expertise, *see* 8 C.F.R. § 204.5(h)(3), USCIS conducts "a final merits determination" to assess whether the totality of the evidence demonstrates the alien has the requisite extraordinary ability.  *See Kazarian*, 596 F.3d at 1121-22.

20.     "The two-part adjudicative approach . . . described in *Kazarian* simplifies the adjudicative process by eliminating piecemeal consideration of extraordinary ability and shifting the analysis of the overall extraordinary ability to the end of the adjudicative process when a determination on the entire petition is made (the final merits determination)."   USCIS Policy Memorandum PM-602.0005.1 at *3, *Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the Adjudicator's Field Manual (AFM)* Chapter 22.2, *AFM* Update AD11-14 (USCIS, December 12, 2010).

21.    "If the USCIS officer determines that the petitioner has failed to demonstrate this requirement [at the final stage], the USCIS officer should not merely make general assertions regarding this failure. Rather, the USCIS officer must articulate the specific reasons as to why the USCIS officer concludes that the petitioner, by a preponderance of the evidence, has not demonstrated that the alien is an alien of exceptional ability under 203(b)(2) of the INA."  PM-602.0005.1 at *23

22.    At the "final merits" stage, "USCIS officers should . . . evaluate the evidence together when considering the petition **in its entirety** to determine if the petitioner has established by a preponderance of the evidence that the self-petitioner or beneficiary has the required level of expertise for the immigrant classification." PM-602.0005.1 at *4 (emphasis added); *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010).

23.    Under the appropriate preponderance of the evidence standard, "[e]ven if the director has some doubt as to the truth, if the petitioner submits relative, probative, and credible evidence that leads the director to believe that the claim is 'more likely than not' or 'probably true,' the applicant or petitioner has satisfied the standard of proof."  *Matter of Chawathe*, 25 I. & N. Dec at 376.

# FACTUAL BACKGROUND

24.     On May 24, 2019, Mr. Zheng filed an EB-1 petition in which he claimed

that he met six out of the ten criteria used to demonstrate extraordinary ability.  *See*

8 C.F.R. § 204.5(h)(3); Exhibit A.

25.     USCIS ultimately agreed that Mr. Zheng's evidence[1] satisfied each one

of the six criteria he claimed to meet, which include those in bold below:

1.  **Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;**

2.  Documentation of the alien's membership in associations in the field for which classification in sought which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

3.  **Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;**

4.  **Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought;**

5.  **Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;**

6.  **Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;**

7.  Evidence of the display of the alien's work in the field

---

[1] Mr. Zheng did not claim that he had a sufficient one-time achievement.

at artistic exhibitions or showcases;

**8.     Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;**

9.     Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

10.     Evidence of the alien's commercial successes in the performing arts, as shown by box office receipts or records, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3) (emphasis added);[2] Exhibit D.

26.     Mr. Zheng submitted volumes of evidence showing his creation of an original general-purpose algorithm has successfully and efficiently analyzed large-scale ordered sequences of data for users worldwide, including multinational corporations like IBM and the highest research laboratories of leading universities, such as Harvard and Stanford.  Exhibit A.  Mr. Zheng demonstrated that his algorithm has solved major, long-lasting problems affecting wide swathes of society, including but not limited to:

a.  providing novel strategies for cancer treatment/moderation;

b.  financial data analytics;

c.  discovering antibodies for influenza epidemics;

d.  understanding mammalian wake and sleep cycles; and

e.  developing preventative measures for heart attacks and ischemic strokes.

---

[2] A catch-all provision at 8 C.F.R. § 204.5(h)(4) provides, "If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility."

Exhibit A.

27.     The success and impact of Mr. Zheng's algorithmic discovery led Mr.

Zheng in 2017 to incorporate Alpha Vantage, Inc., which quickly gained venture

capital and realized exponential growth in customers.  Exhibit A.

28.     Mr. Zheng provided evidence in his petition showing that his

technological breakthrough remains widely utilized and recognized by top tier

universities in the United States (Harvard University, Stanford University); a major

player in global financial markets (IBM Watson Discovery); public and private

entities (Catapult Systems, FOX40, the Sacramento branch of Fox News, Python

Programming Language, R Statistical Programming Language, the Oklahoma

Department of Securities, and Moody's Corporation); venture capital firms

(Flybridge Capital Partners, J.C. Flowers & Co., LLC); and many internationally

recognized academic leaders (Professor Jeffrey Rayport of Harvard Business

School, Professor Dengke Ma of the University of California).  Exhibit A.

29.     Mr. Zheng further submitted proof that he authored work published in

the top three multidisciplinary academic journals—*Science, Nature*, and the

*Proceedings of the National Academy of Sciences*.  Exhibit A.

30.     To support the recognition and acclaim for his work, Mr. Zheng

submitted three letters from Professor Dengke Ma of the University of California

dated September 12, 2018, November 20, 2018 and April 15, 2019, and a letter

from Dr. Jeffrey Rayport of Harvard, all explaining how the publications describe Mr. Zheng's general-purpose algorithm and advance its use by the scientific community; and a Google Scholar report showing 195 citations to Mr. Zheng's articles from 2011 to present.  Exhibit A.

31.      Mr. Zheng also submitted evidence to support the distinction and excellence of Alpha Vantage and the critical role he played in forming this company, including evidence that it had over 200,000 registered users, $2.17 million of raised funding, and maintained the top position in the Google search engine.  Exhibit A.

32.      Mr. Zheng further submitted evidence of national and international acclaim for his technology by way of receipt of the following awards: in 2018 from Y Combinator, where it secured an award of initial funding and support for its start-up, beating out thousands of applicants, in 2018 from Flybridge Capital, and in 2018 from Boston Syndicate (BOSS).  Exhibit A.

33.       Mr. Zheng also documented his role as a judge and mentor of the work of other entrepreneurs at Mass Challenge and Harvard Rock Center for Entrepreneurship, and how this is indicative of his sustained national and international acclaim. Exhibit A

34.     Mr. Zheng provided comprehensive evidence about the media coverage he received for his work, accompanied by detailed evidence regarding the media in which the coverage was published. Exhibit A

35.     On June 5, 2019 USCIS issued a Request for Evidence ("RFE") seeking documentation to establish that Mr. Zheng will continue to work in his claimed area of expertise.  Exhibit B.  The RFE did not initially question that Mr. Zheng qualified as an alien of extraordinary ability.  *Id*.

36.     On June 13, 2019, Mr. Zheng responded to the RFE.  *Id*.

37.     On June 26, 2019, USCIS issued a Notice of Intent to Deny ("NOID"), in which it abandoned any concern it had about whether Mr. Zheng will continue to work in the field, but raised a preliminary finding that Mr. Zheng's evidence only satisfied three of the six claimed regulatory criteria, and that it would ultimately fail to show he merited approval of an immigrant visa as an individual who had risen to the very top of his field of expertise through sustained national or international acclaim.  Exhibit C.  On July 1, 2019, counsel for Mr. Zheng sent an email to the Supervisor of the USCIS Premium Processing Unit, pointing out the gross error of law contained in the NOID, as the NOID contained 100 percent boilerplate language and did not provide any reasonable explanation as to why USCIS intended to deny the petition, and highlighted the AFM mandates that all NOIDs clearly state reasons for ineligibility.  Exhibit C.

13

38.        On July 11, 2019, Mr. Zheng formally responded to the NOID.  *Id*.  Mr.

Zheng referred to the governing standards in *Kazarian* and the AFM to support his

position that the government was using an incorrect standard of law by requiring

that he prove each piece of evidence "individually" proved extraordinary ability

and sustained acclaim, rather than evaluating "the evidence (in its entirety)

together when considering the petition in the entirety for the final merits

determination."  Exhibit C.  Mr. Zheng also pointed to USCIS's failure to provide

any explanation for its ignorance or claims of insufficiency of the evidence

submitted.  *Id*.

39.        On July 26, 2019, USCIS issued its Decision.  Exhibit D.  USCIS

agreed that Mr. Zheng satisfied six of the regulatory criteria for extraordinary

ability: (1) he has received internationally recognized awards; (2)published

material about Mr. Zheng has appeared in major media; (3) he has served as a

judge for the work of others in the technology field; (4) he has demonstrated the

major significance of his original contributions in the field of technology

entrepreneurship; (5) he has authored articles for major media; and (6) he has

performed a leading or critical role for organizations or establishments that held a

distinguished reputation.  Exhibit D.

40.        USCIS concluded, however, that Mr. Zheng did not qualify for an

immigrant visa at the "final merits" stage of the analysis because when USCIS

looked at each piece of evidence, it found the evidence insufficient to prove

sustained acclaim showing Mr. Zheng had risen to the very top of his field.

Exhibit D.

## STATEMENT OF CLAIMS

**Count One:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS Unlawfully Failed to Consider the Uncontroverted Evidence of Mr.**
**Zheng's Extraordinary Achievements and Acclaim Cumulatively**

41.      The APA empowers this Court to set aside a final agency action where,

as here, the agency action is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

42.      An arbitrary and capricious determination results where "the agency has

relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision

that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise."

*Ore*, 675 F. Supp. 2d at 224, *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856 (1983).

43.      An agency is required to "examine the relevant data and articulate a

satisfactory explanation for its action including a rational connection between the

facts found and the choice made." *Id*. (internal quotation marks omitted)

44.     Courts "have held it an abuse of discretion for [an agency] to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Kazarian*, 596 F.3d at 1118.

45.     Here, USCIS unlawfully failed to evaluate the evidence cumulatively at the final merits stage of the adjudicative process.  *Id. at* 1121-22; PM-602-0005.1 at *3-4; Exhibit D.  As an example, but by no means the only example, USCIS discounted Mr. Zheng's 2018 awards without considering them in the aggregate with his prior achievements and accomplishments, which collectively demonstrated that he has sustained acclaim since 2011 and has risen to the very top in his field.  Exhibits A, D.

46.     USCIS unlawfully undertook a piecemeal consideration of the evidence, looking at each criterion individually and failing to look at all of the evidence as a whole, in violation of the clear mandate of *Kazarian* and AFM Section 22.2, and filled its reasons for denial with general assertions and boilerplate language.  PM-602-0005.1 at *3-4; Exhibit D.

**Count Two:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS's Arbitrary Decision is so Implausible that it Could Not be Ascribed to a Rational Difference in View of the Evidence**

47.     Mr. Zheng re-alleges and incorporates by reference herein all of the allegations set forth above.

16

48.     Notwithstanding the erroneous piecemeal consideration of the evidence, the proffered reasoning for denying Mr. Zheng's EB-1 petition is so implausible that it could not be ascribed to a difference in view, runs counter to the totality of the evidence, and thus constitutes an arbitrary and capricious determination.  *Id;* Exhibit D.

49.     Despite conceding, albeit reluctantly, that Mr. Zheng's technological breakthrough and achievements met all six claimed criteria to demonstrate extraordinary ability, USCIS unlawfully failed to consider the evidence cumulatively at the final merits stage, erroneously looked at the evidence in piecemeal fashion at the final merits stage, and irrationally reasoned that each piece of evidence discussed failed to demonstrate sustained national or international claim.  Exhibit D.

50.     Any rational adjudicator, looking at the evidence in the aggregate, would have reached a different conclusion where, as here, USCIS found Mr. Zheng satisfied every one of the six "extremely restrictive" regulatory criteria to demonstrate extraordinary ability.  *Kazarian*, 596 F.3d at 1120-21, *citing Buletini v. INS*, 860 F. Supp. 1222 (E.D. Mich. 1994) (finding denial was arbitrary and capricious where Albanian physician won a national award, published a medical dictionary and numerous articles, was responsible for general health projects, and served as an adjunct professor) (additional citations omitted); Exhibit A.

51.     There remains no dispute that Mr. Zheng presented evidence
demonstrating he had developed a breakthrough technology licensed and adopted
by some of the world's most renowned multinational businesses and academic
institutions, for which he received worldwide acclaim because his technological
breakthrough has solved some of the most complex issues facing society today,
from cancer research to financial analytics.  Exhibit A.  Mr. Zheng published his
work in the top two international academic journals—*Science* and *Nature*; in the
foremost American scientific journal, *the Proceedings of the National Academy of
Sciences*, and over an eight-year period has received 195 citations from other
academic researchers and technology entrepreneurs.  Exhibit A.  Mr. Zheng's
achievements, acclaim and ability has led to the creation of his AI-powered
technology company, which received immediate awards of venture capital from
some of the most renowned venture capital firms and attained exponential growth
in users, totaling more than 200,000 at the time of the filing of the petition.  Mr.
Zheng also documented that his work has received prestigious awards from Y
Combinator, Flybridge Capital and BOSS, invitations to judge the work of others
at the most prestigious organizations, and wide major media coverage.  Exhibit A.
Based on the quality, depth, and longevity of Mr. Zheng's accolades, it is not
possible that any adjudicator could ascribe to a different rational opinion.  Exhibit
D.

52.      The Court should set aside USCIS's arbitrary and unlawful decision and find that Mr. Zheng qualifies as an "alien with extraordinary ability" under INA § 203(b)(1).   *See* 5 U.S.C. § 706(a)(2).

### Count Three:
### Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.
### USCIS Arbitrarily and Unlawfully Made up a New Definition of "Sustained"
### Which Differs from the Regulatory Definition

53.      Mr. Zheng re-alleges and incorporates by reference herein all of the allegations set forth above.

54.      AFM Ch. 22.2(i)(1)(E), as amended, establishes the framework USCIS adjudicators must follow when assessing whether an alien of extraordinary ability has submitted evidence that he or she has sustained national or international acclaim to establish eligibility for an "extraordinary ability" visa under 8 C.F.R. § 204.5(h)(3).   *See* PM-602-005.1 at *1 ("The purpose of this PM is to ensure that USCIS processes I-140 petitions filed under these [first preference] employment-based immigrant classifications with a consistent standard.").

55.      The AFM provides, in relevant part:

> In determining whether the beneficiary has enjoyed 'sustained' national or international acclaim, bear in mind that such acclaim must be maintained. (According to Black's Law Dictionary, 1585 (9th Ed. 2009), the definition of *sustain* is '(1) to support or maintain, especially over a long period of time; 6. To persist in making (an effort) over a long period of time.'). **However, the word 'sustained' does not imply an age limit on the beneficiary.  A beneficiary may be very**

**young in his or her career and still be able to show
sustained acclaim. There is no definitive time frame
on what constitutes 'sustained.' If an alien was
recognized for a particular achievement, the USCIS
officer should determine whether the alien continues
to maintain a comparable level of acclaim in the field
of expertise since the alien was originally afforded
that recognition. An alien may have achieved
national or international acclaim in the past but then
failed to maintain a comparable level of acclaim
thereafter.**

AFM Ch. 22.2(i)(1)(E) (emphasis added).

56.      USCIS failed to apply the proper legal framework to determine whether

Mr. Zheng had maintained sustained national or international acclaim. *Id;* Exhibit

D.

57.      USCIS, which neither cited the AFM, nor revealed the unilateral

standard it decided to apply here, specifically erred in failing to determine whether

Mr. Zheng continued to maintain a comparable level of acclaim for his

technological discovery that afforded him viral recognition over eight years.

USCIS ignored that "sustained" should be a measure of the quality, depth and

longevity of the accomplishments as a whole. Exhibit D.

58.      Rather, USCIS irrationally and unlawfully imposed a "definitive time

line" on Mr. Zheng, in direct contravention of the AFM and without a rational,

articulable basis for doing so.  AFM Ch. 22.2(i)(1)(E); Exhibit D.

**Count Four:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS Unlawfully Failed to Provide Specific Reasons for the Denial and**
**Failed to Consider Material Evidence and Important Aspects of the Record**
**Under the Appropriate Preponderance of the Evidence Standard**

59.     Mr. Zheng re-alleges and incorporates by reference herein all of the

allegations set forth above.

60.     Under the controlling agency adjudicatory policy, "[i]f the USCIS

officer determines that the petitioner has failed to demonstrate this requirement, the

USCIS officer should not merely make **general assertions** regarding this failure.

Rather, the USCIS officer **must articulate the specific reasons** as to why the

USCIS office concludes that the petitioner, by a preponderance of the evidence,

has not demonstrated that the alien is an alien of exceptional ability under

203(b)(2) of the INA."  PM-602.0005.1 at *23 (emphasis added).

61.     USCIS ignored the undisputed material and relevant evidence to support the

international and national acclaim of Mr. Zheng, which led to the violation of the

law and regulations, as it **made it impossible for USCIS to conduct the final**

**merits analysis based on the totality of circumstances and preponderance of**

**the evidence standard** (emphasis added).  Exhibit D.

62.     Some of the most outrageous examples of USCIS's ignorance of the

evidence included:

> a.     USCIS never commented on Mr. Zheng's critical
> role at the Arthur Rock Center of Entrepreneurship, nor

his work as a judge of others at the Arthur Rock Center's New Venture Competition. This ignorance persisted through the initial filing, RFE, NOID, and final decision.

b.      USCIS claims that Mr. Zheng has "made contributions of major significance in his field of endeavor since founding Alpha Vantage in March of 2017." USCIS completely ignored the plethora of evidence pointing to the **same** general-purpose AI technology being used/recognized for a wide range of non-Alpha Vantage scenarios ever since 2011, when Mr. Zheng published the seminal scholarly article in *Nature*. There is extensive evidence prior to 2017 that USCIS did not consider.

c.      The USCIS officer agreed that Mr. Zheng's role leading to the foundation of  Alpha Vantage "satisfied the regulatory criteria in part one," but immediately made the general assertion that "the evidence does not show that the beneficiary has risen to the very top of the field of endeavor, as well as sustained national or international acclaim," without providing any explanations whatsoever.

This blatant ignorance of material and relevant evidence and the use of general boilerplate language, offering no specific reasons, indicate that USCIS could not possibly have made its Decision based on the totality of the evidence and using the preponderance of the evidence standard.

Exhibit D.

63.      Accordingly, the Court should set aside the arbitrary, capricious and unlawful decision of the agency.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the

following relief:

A.      Assume jurisdiction over this matter;

B.      Hold unlawful and set aside USCIS's decision denying the EB-1

petition on behalf of Plaintiff on the grounds that the decision was arbitrary

and capricious;

C.      Enter an order requiring USCIS to approve the EB-1 petition on

behalf of Plaintiff;

D.      Award to Plaintiff attorneys' fees, costs, and interest as permitted by

law; and

E.      Grant such further and other relief as may be just and proper.

                            Respectfully submitted,

                            Shu Zheng, by his attorney,

                            /s/Jesse M. Bless
                            Jesse M. Bless (MA BBO # 660713)
                            JEFF GOLDMAN IMMIGRATION LLP
                            125 Washington Street, Ste. 204
                            Salem, MA 01970
                            (781) 704-3897
                            Jesse@jeffgoldmanimmigration.com


Dated:  August 8, 2019

## **CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Shu Zheng, by his attorney,

/s/Jesse M. Bless

Jesse M. Bless (MA BBO # 660713)
JEFF GOLDMAN IMMIGRATION LLP
125 Washington Street, Ste. 204
Salem, MA 01970
(781) 704-3897
Jesse@jeffgoldmanimmigration.com

Dated:  August 8, 2019